Good morning, Lawrence Padway for the appellant. When I got out of law school, the first thing I learned was the case has to have three things, liability, damages, and somebody to write the check. This statute is about the fact that employees who lose on small benefit cases, which is typically what's involved here, are not in a position to write the check. Just as my client who's on disability with her husband who's on disability, they've been through bankruptcy, all of which is in the record, is in no position to pay a $76,000 fee award. You would concede, though, that until amended, the statute certainly permitted the district court to impose certain fees. It did. So really the question here is retroactivity. Well, it's not really retroactivity because this case is still pending. So retroactivity in the sense of the case is over and a new law is passed, is it going to apply to a finished case? But final judgment had been entered. Well, this case is decided under California law. Under California law, the case isn't over until the appeals are done and so forth. Which definition of finality applies here? Is it the definition that appears to be the parties used in the briefing, which is that it was after the summary judgment order had issued and the final judgment had been entered, or is it the definition that we see in the Federal Supreme — in the Supreme Court cases and the lower court cases applying constitutional retroactivity questions? And the answer is that this Court has held attorneys' fee questions under State law are governed by State law, and that would be Larry's apartment at 249, Fed Third, 832 at 838, and MRO Communications at 197, Fed Third, 1276 at 1281. So the attorneys' fees questions are all decided by State law. Right. So which one — And in State law — What's final under State law? What's final under State law is the appeal is done, the remediator is issued, and the case is over. And that's one of the differences between State and Federal law. But here, there had been no award of attorneys' fees at the time the decision was made. So if you apply the rule that the decision is made based on the law at the time of the decision, then there would have to be a showing of bad faith, which there plainly isn't. And — But the fees have been incurred. That's true. But this is — The money has been spent. This is like a cost. Under California law, this is treated like a cost item. It's like a deposition transcript. It goes on the cost bill. And there's a long line of California cases that say attorneys' fees, which are costs, are treated by the rule at the time of the decision. We cited Olson v. Hickman. That's still good law in California. There — if you shepherdize it, there are all kinds of cases which follow that rule. And, you know, this is a — this is a remedial statute. We have a — if you look at employees with benefit claims, and typically those come in under ERISA, here it's not because there was no trust. But if you look at attorneys' fees in ERISA cases, you would never have this kind of award. If you looked at this on a Fair Employment and Housing Act case in California, never get to this kind of award. And that wasn't fitting in with the general idea, which is that employees need access to the courts. They can't pay corporate attorneys' fee bills. And so the legislature — and their attention was called to this by the Supreme Court dictum in the — in the Kirby case. And as soon as that case came out, they went and they amended the statute. And they said, okay, no, no, we really mean that you have to have bad faith, because that's consistent with the rest of the California Labor Code. It's consistent with how we do things under ERISA. And it's consistent with California law, which holds, as we pointed out, that the — I don't want to go down in our brief, Olson v. Hickman, but there's certainly many cases which have the same rule. I think most recently, the Siri investment at 238 Cal App 4th, 725, came out a month ago, and that deals with a bond, which was part of a cost and how you calculate the cost of the bond. And they applied the rule as changed after the appeal. So, you know, retroactivity and perspective — the prospective application of legislation is designed to protect settled expectations. You don't want people entering into contracts and having the rules change during a lawsuit or after a lawsuit. This isn't that. This is an item in the cost bill. And whether the courts call it a procedural instead of substantive, a secondary instead of primary, but I think, as Justice Stevens pointed out in Land's graph, which is 511 U.S. 244, you know, retroactivity is a matter on which judges tend to have sound instincts. — But the Supreme Court has told us that we look to whether or not the statute creates new consequences or imposes new and different liability in trying to determine whether the statute should have retroactive effect in the absence of a clear legislative direction in one way or the other. As I understand your initial argument, we wouldn't employ that analysis at all under California law, because it's just a simple timing question as to when the remitted are issued. How do I square your argument with what the U.S. Supreme Court has said with regard to retroactivity? — As I look at the California cases, just to follow up on what Judge Tolman said, it doesn't seem to be that clear that when there is an appeal pending, for example, that a statute that became effective after final judgment but during the pendency of the appeal would be deemed not retroactive. — Well, when you talk about statutes generally, yes. — An attorney fee statute, this attorney fee statute. — Well, when you're talking about the... — Well, when you're talking about the statute, yes.   — Well, I'm just wondering if you could apply that to cases that were — that talk about whether or not it should apply to cases that, by your definition, would not be final. And the issue there is termed and is phrased in terms of retroactive application. — Well, I think if you look, for example, and there's a good summary of these cases in Bank of Idaho v. Pine Avenue Association, 137 Cal. F. 3rd at 5. — Is that your best case for the proposition that as long as the time for appeal is still running, that it is not a retroactive application? — On the attorney's fee, sure. — Yes, sir. — But, you know, it's the cost. It's the fact that it's a cost of suit. You know, when are you entitled to recover a cost of suit? — So if we view it as not a cost of suit, but as a substantive element that impacts the rights that have accrued, then your finality argument goes away. Is that right? — No. But then you have a different analysis. But you still— — That doesn't rest on sheer timing. — I'm sorry? — That doesn't depend merely on the timing that you've described. Is that correct? — Yes. I mean, you know, it's a statute, as Justice Scalia points out, is, you know, when you talk about retroactive, it's retroactive to what? And, you know, here, I think the real question is, you know, does an employer who is in litigation over benefits to an employee, you know, really making market decisions and business decisions based on collecting attorney's fees from the employee? I mean, is this a vested benefit? That's the nature of the reliance, that they're going to incur the fees anyway because they've got to defend the summary judgment motion, for example. Is that what you're saying? — Well, that's right. But what I'm saying is it's not a vested benefit. And that's because that's one of the parts of it being on the cost bill. It's not a primary thing. It's a secondary thing. It's a, you know — I mean, there are a lot of different ways that the courts have phrased it, but what it comes down to is if you fit it in to the whole gestalt of making courts available to people of limited means, then, yeah, it's appropriate for this to be applied at the time of the decision, just as happened at Bradley versus the school district of Richmond. — People pursue litigation differently if they think attorney's fees are mutual than if they think they're one-sided. They might spend less time, less effort. They make decisions which are then done. Do you think we should send this to the California Supreme Court to see if they're interested in signing it? — I think that would be — certainly would be fine. But I think, you know, even if you were to say that this is not going to be retroactive, you'd still have to remand it because there was no consideration given of the limited ability to pay. But — — Fair enough. — But I think that the better view of this case is — — You're out of time. — I'm sorry. Thank you. — We'll hear from the other side. — Your Honors, may it please the Court. My name is Emily Barker for defendant of Helley Financial Industry Regulatory Authority. The limited question that we argue here today is whether or not Labor Code Section 218.5, as amended, should have applied retroactively to attorneys' fees that were perfected and vested prior to its enactment. — Can you respond to the question about whether these really, A, was it retroactive, that is, was this final, and then, B, were these vested in the sense that they would not have been — that they were — that the fees were incurred in reliance on the Yes, Your Honor. So the version of Labor Code Section 218.5, in effect, at the time that this judgment was granted, the summary judgment was granted in full on May 7, 2013, provided for mandatory fees. All of the cases in California at that time made clear that the language of the statute which says the Court shall award reasonable attorneys' fees at the point that one of these motions is won shows that — that such an award is mandatory. Because of that, because fees were mandatory and the judge had no discretion to say no fees shall be awarded at this time, the fees were vested and FINRA had a right and entitlement to those fees as of the date of winning summary judgment. The only question that remained was whether or not those fees were reasonable. I know there was a second part to your question, Your Honor. What — under California law, before the amount had been determined and awarded, number one, and number two, before all appeals ended or the time for appeals expired, is there a — is it — is it final so as to make application of the new statute retroactive? Yes, Your Honor. It is final, especially when you consider the fact, again, as Your Honor pointed out, the reasonable expectations of the party at the time, which is something that's very important in these cases as described in the U.S. Supreme Court. The reasonable expectations of the parties at the time that they argued and briefed the summary judgment motion, both parties, Ms. Vertusio as well as FINRA, was that when judgment was — was awarded, it would be mandatory fees in favor of the prevailing party. In terms of Ms. Vertusio's expectations, she was — I'm sorry. In terms of FINRA's expectations, it was not expecting at that time to have to prove a bad-faith requirement. It incurred those fees in reliance on the fact that it would be getting mandatory fees at that time. In terms of the decision to proceed to summary judgment as opposed to some other choice, perhaps, settlement or other things, the calculus changed for FINRA. And that is really the key here. The U.S. Supreme Court has been very clear that when applying a new statute retroactively imposes an additional unforeseeable obligation upon a party, then it applies impermissibly retroactively. And I think some of the cases that this panel directed us to for today point out very clearly why it is that in this instance this statute would operate impermissibly retroactively on the determination that fees should be awarded in this case. Collins v. Montgomery. In that case, there was a statute similarly that was enacted mid-litigation, and it did two things. It capped the amount of fees that an attorney who was defending a prisoner in a prisoner's rights suit could get. It also required a prisoner pay a portion of such fees from this award. The statute in that case mandated that fees shall not be awarded unless the fee was directly and reasonably incurred. In other words, the reasonableness and the directness of the incurring of the fees was a conditioned precedent to determine whether or not there was an entitlement. On that basis, this Court held that fees incurred, and thus fees through which these parties were entitled prior to the statute's enactment, would not have the cap. And fees incurred. Actually, that was the Third Circuit who said that. We didn't say that, right? I'm sorry, Your Honor? That was the Third Circuit in Collins? This was the Third Circuit, yes. Not as good. I'm sorry, Your Honor? No. Definitely not, Your Honor. I didn't mean the Court isn't as good. I just meant the precedent isn't as good. Okay. That's what it must have meant. And I'm sure that's what he meant. Uh-huh. We understood. If it were the Fifth Circuit, that would be a whole different matter. So the fees incurred after the statute's enactment, and thus to which those parties became entitled after the statute's enactment, the cap was applied. But, of course, all you were vested in, if you were vested at all, was some fees. The amount was still left to the district judge's discretion, correct? Correct, Your Honor, but the statute. That's a very unusual vested right, isn't it? It is unusual, but I will say this, that the portion of the fees statute that was changed, that was amended, had no — it did not change the reasonableness requirement whatsoever. And so the only portion of the statute that changed was the portion that dealt with entitlement. And the entitlement is what's at issue here. And the reasonableness of the fees is something, you know, that can also be discussed. But really the question at issue here currently is whether or not the entitlement applies at all. But my point is that it's in a — they're sort of tied together because if you are entitled to have the question of fees put to the district judge's discretion, which is essentially what you would have been under the prior statute, right? Well, under the prior statute, fees would be mandatory once we reach this entitlement. The district court judge would have discretion as to the amount, but of course the discretion is limited by case law as well. And that discretion is limited by — there are certain presumptions. For example, there's a presumption that attorneys' fees, the Lodestar, for example, is presumptively reasonable. What's the role of the poverty of the defendant — of the losing party in exercising that discretion? In exercising that discretion, Your Honor, the ability for a defendant — I'm sorry, for a losing party to pay a judgment is something that obviously the court will consider. But again, the Lodestar is considered presumptively reasonable, and in this case the court did reduce the Lodestar somewhat. Also, the fees incurred and paid by the client to the firm are considered presumptively reasonable, and we submitted records of all of our fees and bills in that case. Counsel, where in the record do we have any indication that the district court actually considered the financial situation of the plaintiff? In the record itself, I don't believe there is any indication of that. But also in the briefing to the lower court, I don't believe there was actually — there was no citation, essentially. There was a paragraph at the end that said, you know, that said that the court should consider the plaintiff's indigency. There was no citation in that record. So the district court didn't say anything one way or the other that I've considered it and that's one of the factors in the 25 percent reduction in the attorney's fee award? No, he did not, Your Honor. And doesn't our case law suggest that if the district court doesn't indicate that it actually considered a factor that it must consider, that we have to send it back and ask the court to take another look at it? Your Honor, I'm not sure the law is clear that it's actually something that must be What's your response to opposing counsel's argument about this ironclad finality rule that all we need to know is the timing of the issuance of the remitted or before we can declare that the judgment is final? I think that the answer to that is contained in the fairness principles that are articulated under Landgraft and the idea that parties should be able to litigate their cases with a reasonable expectation of the laws that will be applied to their case at that time. I'm not sure that engages opposing counsel's argument. He's saying that under California law the only thing that matters is when the remitted or issues after the last appellate court rules on the judgment. I have to admit that was not an argument that I picked up on from his briefs and I'm just wondering if you're as surprised by it as I was. I am, Your Honor. And I don't have a case to respond to at the moment because it was not in the briefs and I wasn't expecting it. And I can submit one. I can look and submit one for you within the next 24 hours if you'd like. But my initial reaction to that argument is that the California case law that was developed that surrounded the 218.5 being a mandatory fee as of the date of the judgment would seem to be somewhat obviated if it's mandatory but it's kind of wishy-washy wonky and may or may not happen at some point. Well, it would certainly ease the application of the retroactivity rule if that were the case. I take it you're not familiar with the Bank of Idaho decision that he says is his best case on this point. I am not, Your Honor. I would go back and read it and be happy to submit something in response if you'd like. Should we send this to the California Supreme Court to see if they're interested? Your Honor, I think that this Court has the ability to decide this case. I think that this is a simple question of authority and ability, Your Honor. That is such a non-answer. Do you want to say something else obvious? Nice day, right? Yes. Good weather in California. Exactly. Great weather today. Any other sort of non-sequiturs you want to sort of put on the record now? Your Honor, I see I'm— I know you're out of time, but you're not going to sit down until you answer my question, so— Go ahead, Your Honor. I think you can stop damping. I'm sorry, could you please repeat your question, Your Honor? Should we send this to the California Supreme Court? Should we certify it to the California Supreme Court, see if they're interested in deciding it? I couldn't hear that last portion. You know certification procedure? Yes. You know how we certify questions to state court? Yes. Is this the kind of issue which is certified to the California Supreme Court? I think—no, Your Honor, because I think the constitutional questions of retroactivity apply here in such a way that this case can be decided here and does not need to be decided by the California Supreme Court. I think— So you view this as a Federal issue? No, Your Honor, it's under California law, but I also think there are constitutional principles here at play. I also think that the— You're too tough on them, huh? That's what you're saying? We know the constitutional stuff. Your answer is no. My answer is no, Your Honor. All right, thank you. Thank you, Your Honor. I think you are out of time. We'll give you a minute for a bottle if you wish to take it. I don't—if there are any questions, I'd be happy— Well, I have one. Did you cite Bank of Idaho in your briefing? No, we cited Olson v. Hickman, which for some reason seems to have been overlooked. So Bank of Idaho was overlooked? No. Why didn't you cite your best case to us? Well, I think Olson v. Hickman is our best case. But that's not what you said to Judge Rosenthal. Well— You told her that it was Bank of Idaho. Bank of Idaho has a discussion of the line of California cases. It started with Olson v. Hickman. So if I look at Bank of Idaho, does it cite to Olson? Yes. Okay. I mean, if you shepherdize Olson, it shepherdizes very nicely. And there's a line of cases that talk about attorney's fees. These are costs, and they apply when the rules change. Okay, we'll take a look at it. Okay. Thank you. Thank you. The case is filed. You will stand submitted. We will adjourn.
judges: Rosenthal, Kozinski, Tallman